IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 5, 2009 Session

### DERRICK MCCLURE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26083     John P. Colton, Jr., Judge**

_____

**No. W2008-00444-CCA-R3-PC  - Filed October 19, 2009**
_____

The petitioner, Derrick McClure, was convicted of first degree murder, attempted first degree murder, and two counts of especially aggravated robbery. Following a jury trial, the petitioner received an effective sentence of life plus twenty-five years in the Tennessee Department of Correction. On appeal, the petitioner asserts that the post-conviction court erred in failing to find that due process considerations tolled the statute of limitations to allow him reasonable time to file his petition asserting the ineffective assistance of counsel. Following a review of the parties' briefs, the record, and applicable law, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Paul J. Springer, Memphis, Tennessee, for the appellant, Derrick McClure.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Damon Griffin and Tiffany Taylor, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

#### Background

Following a jury trial, the petitioner was convicted of first degree murder, attempted first degree murder and two counts of especially aggravated robbery. On appeal, this court affirmed the petitioner's convictions and sentence. *See State v. Derrick McClure*, No. 02C01-9705-CR-00192, 1998 WL 148322, at *1 (Tenn. Crim. App., at Jackson, March 31, 1998), *perm. app. denied* (Tenn. Dec. 7, 1998). The following is a recitation of the convicting evidence set forth in this court's opinion on direct appeal:

On April 16, 1994, the [petitioner], Charles Speed, and Harry Robinson, all juveniles, made plans to rob a convenience store.FN1 Their strategy included locating a store without a video camera and shooting the clerks in order to prevent their identification. They further discussed "who was going to shoot them, who was going to get the money, . . . who was going to be the lookout, and where [they] were going to go once [they] did it." The three then proceeded to "some girl's house" in East Memphis and then to "Hyde Park to get the gun." Once the group had obtained the gun, they rode around until they located the Liberty Grocery Store.

FN1. The [petitioner] was sixteen years old when the offenses were committed.

The [petitioner], Speed, and Robinson entered the store and attempted to purchase some beer. Sung Su Kim, the proprietor of the family owned business, refused to sell the beer to the juveniles because they appeared to be underage and they did not have proper identification. The three teenagers returned the beer to the cooler and left the store. Soon thereafter, one of the juveniles reentered the store and explained to Mr. Kim that he had identification. Mr. Kim responded that, although he may have proper identification, state law requires a person to be twenty-one years of age to purchase beer. The juvenile then left the store.

Chae Kim, Mr. Kim's aunt, who was also working in the store that day, went outside to get some fresh air. When she returned, she informed Mr. Kim that the trash needed to be taken to the dumpster. "A minute or two" after Mr. Kim had returned from the dumpster, he heard a voice from behind him. Mr. Kim turned and saw the three juveniles who had earlier attempted to purchase the beer. The [petitioner], armed with a pistol, shot Mr. Kim in the face and then in the chest. Kim fell to the floor, whereupon the [petitioner] again shot Mr. Kim; this time in the leg. Then, reaching over the counter, the [petitioner] fatally shot Chae Kim, who was crouched in fear behind the store counter. Ms. Kim was shot once in the head. After the shooting had ceased, one of the juveniles attempted to open the cash register, but was unsuccessful. The teenagers gathered fourteen or fifteen dollars, some coins and some food stamps which were laying on the floor, and fled the store. Mr. Kim, unable to stand, crawled toward the telephone in an effort to dial "911."

Carolyn Gunn, a neighborhood resident, and her teenage son, Kevin Parker, were outside the store when Kevin warned her "Mama, don't go in the store. There's shooting in there." A minute later, Mrs. Gunn observed a "guy run out the store" and get into a white car containing two other people. Although Mrs. Gunn did not recognize the person leaving the store, her son exclaimed, "Mama, that's Derrick!" Kevin explained that he recognized the [petitioner] because "Derrick" had dated his cousin and attended Humes High School. Upon entering the store, Mrs. Gunn found Mr. Kim "standing up on the outside of the counter with the phone." She also

-2-

observed "[Chae Kim] lying over behind the counter." Mrs. Gunn told Mr. Kim to lie on the floor, took the telephone from him, and dialed "911."

Later that evening, Memphis Police Officers Donald Dickerson and Jerry Collard proceeded to the [petitioner's] residence and placed him under arrest for the robbery of the grocery store. Subsequent to his arrest, the [petitioner] made two statements admitting his involvement in the crimes. The first statement was made after the [petitioner] was arrested and placed in the squad car for transporting to the police station. No *Miranda* warnings were provided on this occasion. The second statement involved a written statement on the following day given in the presence of his adult sister and after being provided *Miranda* warnings. In the written statement, the [petitioner] admits that the three planned the robbery of the Liberty Grocery. Additionally, he admits that he was present and participated in the robberies by the taking of money and food stamps. In his statement, he denies, however, that he was the person who shot either of the victims. Both statements were admitted into evidence.FN2 At trial, Mr. Kim identified the [petitioner] as the person who shot him in the face, chest and leg. Additionally, Kevin Parker identified the [petitioner] as one of the two individuals who he saw running out of the grocery store, after hearing gunshots.

> FN2. No incriminating statement was made by the [petitioner] in his oral statement to the police that was not included in his more comprehensive written statement.

*Derrick McClure*, 1998 WL 148322, at *1-2.

On January 15, 2002, the petitioner filed his pro se petition for post-conviction relief claiming that he received ineffective assistance of counsel. The petitioner asserted that trial counsel failed to respond to inquiries regarding his Rule 11 appeal. The petitioner argued that because trial counsel's assistance was ineffective, the petitioner did not file his petition for post-conviction relief until after the expiration of the statute of limitations. The post-conviction court found that the one-year statute of limitations barred the petition for post-conviction relief and that no statutory exceptions or due process considerations existed to toll the statute of limitations. The petitioner appealed the dismissal of his post-conviction petition to this court. In a previous opinion, this court reversed the decision of the post-conviction court and remanded the case for an evidentiary hearing with instructions as follows:

> In order to ascertain whether the misconduct of the petitioner's attorney constitutes a due process violation that would toll the statute of limitations, certain facts must be determined. In *Williams* [*v. State*, 44 S.W.3d 464 (Tenn. 2001)], our supreme court surmised that "[i]f [the petitioner] was under the impression that a Rule 11 application was pending during this time, then he was precluded from acting pro se to pursue post conviction relief while presumably being represented by counsel." *Id*. Our supreme court then stated that the question to consider "is whether

the [petitioner] in this case was, in fact, misled to believe that counsel was continuing the appeals process." *Id.* In this case, it is necessary to determine whether counsel's failure to inform the petitioner of the denial of the Rule 11 application caused the petitioner to erroneously believe that his counsel was continuing representation. In addition, it is necessary to determine why counsel did not file for post-conviction relief, or, in the alternative, inform the petitioner of his intent to withdraw from representation. Finally, the questions of how and when the petitioner received notice of the denial of his Rule 11 application need to be determined. Therefore, we remand to the post-conviction court for an evidentiary hearing to determine (1) whether due process tolled the statute of limitations so as to afford the petitioner a reasonable opportunity after the expiration of the limitations period to present his claim in a meaningful time and manner; and if so, (2) whether the petitioner's filing of his post-conviction petition on January 15, 2002, was within the reasonable opportunity afforded by the due process tolling. *See Williams*, 44 S.W.3d at 471. If the post-conviction court determines that due process considerations tolled the statute of limitations and the petitioner filed his petition within a reasonable time after the expiration of the statute of limitations, then the court shall grant the petitioner the opportunity to seek a post-conviction hearing on the merits. If the post-conviction court determines otherwise, the court shall dismiss the petition as untimely.

*Derrick McClure v. State*, No. W2004-00519-CCA-R3-PC, 2005 WL 357896, at *3 (Tenn. Crim. App., at Jackson, Feb 15, 2005).

On remand, the post-conviction court held a hearing on December 1, 2005 to determine whether due process considerations tolled the statute of limitations to afford the petitioner a reasonable time to file his petition for post-conviction relief. The prosecutor advised the post-conviction court that trial counsel for the petitioner informed the state that he no longer had the petitioner's file, and therefore, the state could not present evidence to prove that the petitioner was informed of the status of his Rule 11 application. The state submitted that due process considerations tolled the statute of limitations and that the petitioner was entitled to an evidentiary hearing.

In compliance with this court's instructions, an evidentiary hearing was held June 7, 2007 on petitioner's assertion that he received the ineffective assistance of counsel at trial. After announcing to the court that he was ready to move forward with the hearing on the petition for post-conviction relief, post-conviction counsel presented the testimony of the petitioner. We summarize the petitioner's testimony at the hearing as follows. The petitioner testified that trial counsel failed to investigate his case. According to the petitioner, he did not discuss the facts and circumstances of the case with trial counsel and they "did talk but [they] wouldn't just talk too much about the case or nothing." The petitioner only talked to trial counsel on the days that he had to come to court. Trial counsel visited the petitioner only one time in jail before his trial. During the visit, they met for thirty or forty minutes and discussed whether the petitioner would testify at trial and reviewed the statements that petitioner made to law enforcement. The petitioner said that counsel did not ask whether petitioner's statements were voluntary and petitioner "tried to . . . tell him to talk to [his] sister and [witnesses] that [were] there, but he kept on talking [and] shaking his head saying like it

-4-

don't . . . really matter." The petitioner said that his sister would be able to tell counsel that his statement was "probably coerced a little bit."

The petitioner stated that at the time of his arrest, he was supposed to be involved in therapy and his doctor was going to prescribe him medication for depression and "something like" psychosis. The petitioner said that during the guilt phase of petitioner's trial, he did not discuss his mental health problems with trial counsel. He could not recall whether trial counsel requested a mental health evaluation. The petitioner said he did not tell trial counsel about his mental health problems until his sentencing hearing. He asserted that his mental illness may have affected his conduct at the time he committed the crimes and further asserted that his mental illness should have been considered during sentencing.

The petitioner testified that counsel failed to collect certain evidence for trial. Specifically, he stated that he told counsel about a recording of a juvenile court hearing and ballistic reports, but trial counsel did not obtain the evidence. The petitioner also stated that he believed counsel should have questioned the officers who testified at trial regarding their investigation of another suspect who was taken into custody. The petitioner said that counsel failed to call witnesses that would have been helpful to his case, did not share with him how the state's witnesses would testify, or tell him that one of the victims identified him as the shooter.

The petitioner said that he and trial counsel "had a conflict because [trial counsel] was trying to get [him] to plead guilty to a life sentence," and he did not want to plead guilty. He stated that there were no other offers tendered to him other than the life sentence. The petitioner stated that he did not feel that trial counsel was prepared to go to trial and stated that counsel discussed with him the possibility of a continuance. The petitioner said that he wanted a continuance, but it was never requested by counsel because counsel "didn't want no [sic] continuance." The petitioner stated that he addressed the court and asked for a continuance. The petitioner stated that counsel did not advise him about the phases and content of his trial. As a consequence, the petitioner did not understand what was going on during the trial and "[e]verything was just blank."

According to the petitioner, after discussing with counsel his right to testify at trial, he did not testify. Upon further inquiry by the post-conviction court, the petitioner indicated that he did not want to testify because he had already given a statement. The petitioner said that he did not discuss any strategies related to testifying with counsel. He claimed that counsel was aware that he had already testified at the suppression hearing that he was not the shooter, and that he had also given a statement denying that he was the shooter.

The petitioner stated that trial counsel also represented him on his direct appeal. The petitioner acknowledged that he received a copy of the appellate brief filed on his behalf and the appellate court's opinion affirming his convictions and sentencing. The petitioner stated that he objected to the brief because counsel failed to challenge his indictment and omitted several issues that petitioner wanted raised including an argument asserting possible evidence tampering.

On cross-examination, the petitioner testified that he filed his petition for post-conviction relief because he felt that trial counsel did not adequately represent him. He admitted that while his

petition asserted that trial counsel failed to investigate his case or interview witnesses, he had not provided counsel with the names of any witnesses. The petitioner also acknowledged that in statements to the police, he admitted his involvement in the crimes. The petitioner said that his statements were not voluntary because at the time that they were given, he did not know the legal system and he "was nervous and didn't understand what was going on[.]"

On redirect examination, the petitioner testified that he felt like he had to give a statement to police because of pressure from the officer and his sister. On recross-examination, the petitioner admitted that he was not forced to give a statement.

## Analysis

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is bound to the post-conviction court's findings of fact unless the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is de novo with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Id.*

### A. Statute of Limitations

On remand from this court, the post-conviction court held a hearing on December 1, 2005 to address again the issue of whether the statute of limitations was tolled. Trial counsel attended the December 1st hearing. He stated that although he remembered some aspects of the case, he had no memory of notifying the petitioner of the status of his Rule 11 appeal. The state announced that it could not produce evidence to rebut the petitioner's claim. The post-conviction court granted the petitioner the opportunity to seek post conviction relief. A hearing on the merits of the petition was held on June 7, 2007. Because the issue of whether the petition was time barred is moot, this court will not address the issue.

### B. Ineffective Assistance of Counsel

Initially we note that on appeal the petitioner raises only one issue, "whether due process considerations tolled the statute of limitations for filing a petition for post-conviction relief." (Brief, 5) Because the petitioner did not challenge the post-conviction court's finding that he failed to meet his burden of proof that trial counsel was ineffective, the petitioner has waived the issue on appeal. *See* Tenn. R. App. P. 13. Notwithstanding the petitioner's waiver of the issue, this court instructed that on remand, if the petition was not time barred, the post-conviction court should hold an evidentiary hearing for a determination of the merits of the petitioner's claim. *See id.* Therefore, we review the record before us for consistency with our previous opinion.

The petitioner seeks post-conviction relief alleging the ineffective assistance of counsel. At the June 7th hearing the petitioner testified in support of his claims. We summarize the petitioner's assertions as follows: 1) that trial counsel should have conducted a more thorough investigation and

failed to contact or interview witnesses; 2) that trial counsel fell below a reasonable standard of representation in failing to request a mental evaluation; and 3) that trial counsel met with him only one time and was not adequately prepared for trial. On appeal, the state asserts that "the post-conviction court correctly found that the petitioner failed to carry his burden of proof to show deficient performance."

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. *Strickland*, 466 U.S. at 694. Prejudice to the petitioner is satisfied by the petitioner demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *Nichols,* 90 S.W. 3d at 587.

The record before us contains the petition for post-conviction relief, the order of the trial court, and a transcript of the evidentiary hearing on the merits of petitioner's claim. The record does not contain a request by the petitioner to present additional proof, to make an offer of proof pursuant to Tenn. R. Evid. 103, nor a petition to rehear in accordance with Tenn. R. App. P. 39 since the June 7, 2007 hearing. The defendant has a duty to prepare a record which conveys a fair, accurate, and complete account of the lower court proceedings for appeal. *See State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); *see also* Tenn. R. App. P. 24(b). Our review is limited to the record before us. Tenn. R. App. P. 3.

The petitioner asserts that trial counsel should have conducted a more thorough investigation and complains that trial counsel did not contact or interview witnesses. At the June 7th hearing, the petitioner testified that trial counsel failed to present evidence at trial including recordings of a juvenile court hearing, ballistic reports, and the testimony of officers regarding their investigation of another suspect. As to his claim that trial counsel failed to interview potential witnesses, the petitioner admitted that counsel asked for potential witnesses and he did not provide the names of any witnesses. The presentation of these witnesses at the post-conviction hearing is generally necessary to prove that counsel's failure to present evidence resulted in prejudice to the petitioner. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn.Crim.App.1990). Therefore, the petitioner has failed to meet his burden to show that trial counsel's investigation of the case was ineffective or

presentation of evidence and witnesses at trial fell below a reasonable standard. Moreover, the petitioner has failed to show that he was prejudiced by trial counsel's investigation of his case or his failure to interview or present witnesses.

The petitioner asserts that trial counsel's failure to request a mental evaluation fell below a reasonable standard. He claims that an evaluation would have allowed a jury to evaluate his mental state at the time he committed the offenses charged. However, at the post-conviction hearing, the petitioner did not present the necessary expert testimony regarding his mental state and has presented no evidence to support that an evaluation was necessary. Neither the post-conviction court nor this court may speculate on what a witness' testimony might have been if introduced by counsel. *Black v. State*, 794 S.W.2d at 757. Moreover, the petitioner admitted that he did not make trial counsel aware of any mental issues until after the jury had returned it's verdict. We conclude that the evidence does not establish that trial counsel was deficient for not ordering a mental evaluation of the petitioner. *See Michael Williams v. State*, No. W2005-01810-CCA-R3-PC, 2006 WL 3371404, at *5 (Tenn. Crim. App., at Jackson, Nov. 20, 2006), *perm. app. denied* (Tenn. Mar. 19, 2007) (concluding that trial counsel was not deficient in failing to investigate the petitioner's mental capacity where counsel had no indication that the petitioner suffered from mental illness.).

The petitioner also argued that trial counsel met with him only one time and was not adequately prepared for trial. The post-conviction court found that petitioner met with trial counsel to discuss the statement petitioner made to the police and whether petitioner wanted to testify and "that the petitioner did not show that counsel's failure to schedule more frequent meetings with him fell below an objective standard of reasonableness." We agree and conclude that the petitioner has not demonstrated that trial counsel's failure to meet with him more frequently fell below the objective standard of reasonableness or that trial counsel's failure to meet more frequently with the petitioner would have changed to outcome of his trial. *See Strickland*, 466 U.S. at 688, 694.

The record does not preponderate against the findings of the post-conviction court that the petitioner failed to meet his burden of proof. Therefore, we conclude that the petitioner failed to demonstrate that he was denied the effective assistance of counsel and the trial court did not err in denying the petitioner's petition for post-conviction relief.

Conclusion

The denial of post-conviction relief is affirmed.

_____
J.C. McLIN, JUDGE